SUPERIOR LODGE OF HONOR, Respondent, v. SATCHWELL et al., Appellants.

St. Louis Court of Appeals, April 18, 1905.

1. INSURANCE: Benefit Certificates: Designation of Beneficiary. In an action by a mutual benefit association to determine the distribution of a fund payable on a death certificate, the evidence examined and held sufficient to authorize a finding that the beneficiary was changed to the person in whose favor the judgment was rendered.

2. ———: ———: ———: Trust Fund. Where the evidence showed that the beneficiary was intended by the insured to hold the fund as a trustee for the payment of debts and for the benefit of the insured's children, the court should have protected the fund by requiring bond, and, if necessary, by appointing a trustee capable of executing the trust.

Lodge v. Satchwell.

Appeal from St. Louis City Circuit Court.—*Hon. James R. Kinealy,* Judge.

On a bill of interpleader by the plaintiff to determine the distribution of the fund payable on an insurance benefit certificate, the trial court awarded the fund to Catherine Philbin, Nellie Satchwell and other defendants, joined in the bill of interpleader, appealed.

REVERSED AND REMANDED (*with directions*).

*John P. Leahy* for appellants.

(1) The contract between the plaintiff and Mary Satchwell was that the former should pay the insurance to the persons designated in the certificate unless she should change the names of the beneficiaries, and the manner in which this should be done formed part of the contract of insurance. The mode of executing the reserve power cannot be regarded as an idle ceremony. Stephenson v. Stephenson, 64 Ia. 554. When the charter of a society specifies the manner and mode of changing the beneficiary, and the extent to which such changes can be made, these provisions must be strictly complied with, and it is not within the power of the society or its members to waive strict compliance with all such provisions. Niblack on Benefit Societies, 415. (2) While these appellants during the life of the assured had no right in the policy, upon her death they required rights which could not be cut off except in the manner prescribed in the contract. Wendt v. Legion of Honor, 72 Ia. 682; Grand Lodge v. Ross, 89 Mo. App. 624; Coleman v. Supreme Lodge, 18 Mo. App. 189. (3) The validity of the substitution of a new beneficiary in place of the one named in the certificate must be determined by the terms of the certificate and of the charter and the by-laws of the society. If these provide for the substitution of beneficiaries in a certain way all other ways are excluded and a substitution which is not in substantial

compliance with the mode prescribed is invalid. Head v. Sup. Council, 64 Mo. App. 212; McLaughlin v. McLaughlin, 104 Cal. 177; Green v. Ass'n (Wis.), 38 N. Y. 1041; Broom v. Grand Lodge, 57 Atl. 176.

*Edward A. Noonan, Jr.,* and *Chilton Atkinson* for respondent.

(1)   The appellants had no vested rights in the previous certificate and would not have had any in the proposed new   certificate to Ellen   McCormack et al., had such a certificate been issued. Supreme v. Nidelet, 81 Mo. App. 598-109 Mo. 560, 19 S. W. 25; Relief Assn. v. Strode, 103 Mo. App. 694, 77 S. W. 1091.   (2)   Anterior to the death of the member, the   association, for whose benefit alone the rules governing changes of beneficiaries are made, may .waive compliance with any rules respecting formalities to be observed by its members in changing beneficiaries, and thus validate attempts to change beneficiaries which might be ineffectual under the strict rules of the order.   Grand Lodge v. Reneau, 75 Mo. App. 402; Association v. Kirgin, 28 Mo. App. 80; Fanning v. Supreme Council, 82 N. Y. S. 733, 84 App. Div. 205.

GOODE, J.—The plaintiff, the Superior Lodge Degree of Honor of the Ancient Order of United Workmen, is a fraternal society issuing certificates   of insurance. Mary Satchwell, now deceased, was formerly a member of Acorn Lodge No. 44, in the city of St. Louis.   She took out a benefit certificate October 30, 1902, designating her   husband, Hubert   Satchwell, as   beneficiary. Afterwards, on May 15, 1903, the insured   revoked the designation of her husband as benefiiary of the certificate and directed that a new certificate issue, payable to "Nellie, Joseph, Charlie, and Katie   Satchwell and Catherine Philbin, bearing the relation to me of mother, guardian of my children, without bond."   A certificate

payable to those beneficiaries was issued May 20, 1903. On July 24, 1903, Mrs. Satchwell ordered her second designation of beneficiaries changed so that the certificate would be payable as follows: "To Nellie, $100; Joseph, $100; Charlie, $100; Katie, $300, bearing the relationship to myself as children, and $400, to Mrs. Ellen McCormack (aunt by marriage) for paying all indebtedness imposed by me such as doctor and undertaker."

This request for a change of beneficiaries was made on the back of the second certificate by filling a printed blank, signing it and procuring the attestation of the signature by the recorder of Acorn Lodge, Emma N. Messenger, and the seal of said Lodge. The request strictly conformed to the by-laws of the order. At the time it was made Mrs. Satchwell was very low with consumption; on her deathbed in truth, because she never got up and died October 14, 1903. Mrs. Messenger, recorder of Acorn Lodge, transmitted the certificate with the request on the back for a change of beneficiaries, to Clara Belle Murrell, recorder of the Grand Lodge, whose office was also in St. Louis. The by-laws of the order provided that a beneficiary must be a member of the family of the insured or some person related to her by blood, or dependent on her. When Mrs. Satchwell's request was presented, Mrs. Messenger felt dubious about the capacity of Mrs. McCormack, a relative by marriage only, to be beneficiary. But as she was to take as trustee and pay the sum made payable to her on any indebtedness the insured might leave, Mrs. Messenger thought that probably she came within the spirit of the by-laws. When the Grand Recorder received the request, she asked advice from the Grand Council of Honor on the subject. While waiting for a reply and with the certificate still in her hand, she was directed by John Flannery, a distant relative of Mary Satchwell, for whom he assumed to act, to designate Catherina Philbin as beneficiary. In obedience to Flannery's direction Mrs. Mur-

rell erased the names of the children and of Mrs. Mc-Cormack in the request by drawing a red line across them and inserted, in lieu of them, the name of Catherine Philbin, as mother. The request then read as follows:

"I, Mary Satchwell, to whom the within certificate was issued, do hereby revoke my former direction as to the payment of the Beneficial Fund due at my death and now authorize and direct such payment to be made to *Nellie*, $100; *Joseph*, $100; *Charlie*, $100 *and Katie* $300. Catherina Philbin bearing relationship to myself of mother, *children and $400 to Mrs. Ellen McCormack (aunt by marriage) for paying all indebtedness imposed by me such as Doctor & Undertaker.**

"Witness my hand and Seal this 24th day of July, 1903.

"MARY SATCHWELL        (Seal)

"Attest: EMMA N. MESSENGER, Recorder."

Mrs. Murrell made out a new benefit certificate payable to Catherina Philbin and transmitted it to Mrs. Messenger, Recorder of Acorn Lodge, with the following letter inclosed:

"St. Louis, Mo., Aug. 4, '03.

"Mrs. Emma N. Messenger,

"Recorder Acorn Lodge, No. 44, Degree of Honor, A. O. U. W.

"Dear Sister:—Enclosed find the policy changed as Mrs. Satchwell desires. The changes you instructed me to make were referred to our G. C. of H., Mrs. Morgan, and at that date could not be done.

"While I was awaiting the reply of the G. C. of H., as to what to do, I received instruction from Mr. J. Flannery, a cousin of Mrs. Satchwell, to write the policy as it now reads. I therefore return it to you, and if not satisfactory to the applicant, will make such changes as she desires.

---

*The words in italic are the ones that were stricken out.

"Hoping this may prove satisfactory and that I may soon receive some more beneficiary applications from Acorn Lodge, No. 44, I remain yours fraternally, C. H. & P.          CLARA BELLE MURRELL, G. R."

Mrs. Messenger returned the new certificate to the Grand Recorder for the reason that it was not in conformity to Mrs. Satchwell's request. It was again sent by Mrs. Murrell to Mrs. Messenger and taken by the latter to Mrs. Satchwell, who, according to some of the witnesses, expressed dissatisfaction, but put the certificate under her pillow and retained it. After Mrs. Satchwell's death the money was claimed for the children by Mrs. Philbin, with the result that the present suit was instituted and the rival claimants ordered to interplead. A guardian *ad litem* was appointed for the minor children and an interplea in behalf of them and the adults filed, in which the erasure of the designated beneficiaries from the mother's request, the insertion of the grandmother's name and the subsequent delivery of the new certificate, were alleged to be contrary to the intention of the mother and the by-laws of the order, and, hence, void acts. Mrs. McCormack did not contest Mrs. Philbin's right. Catherine Philbin's interplea avers that the deceased directed Flannery to have said Catherine's name inserted as beneficiary and a certificate issued to her. Flannery says he told Mrs. Satchwell that was the only way the fund could be kept out of court. The idea seems to have been that Mrs. Philbin would be the guardian of the children after the mother's death and as such entitled to the money; but would hand it over as soon as received, to Mrs. McCormack to manage for the children. Flannery testified that while Mrs. Satchwell was awaiting the return of the certificate from the Grand Lodge, to which it had been transmitted for the change of beneficiaries to be made, she became uneasy on account of the delay and asked him to see about the certificate. He ascertained the ob-

stacle in the way of making Mrs. McCormack beneficiary and reported to Mrs. Satchwell, who then authorized him to have the certificate made payable to her mother, Catherine Philbin, and by his authority the Grand Recorder erased the names originally written in the request, inserted Mrs. Philbin's and issued a new certificate to the latter. The circuit court entered judgment that the fund be paid to Mrs. Philbin.

The main proposition advanced in favor of the appellants is that the issuance of the new certificate with Mrs. Philbin's name as beneficiary, was unauthorized by the insured and was not done in compliance with the laws of the order. Whether or nor Mrs. Satchwell authorized it was a question of fact and we will not interfere with the finding of the court below, which is supported by the evidence. It is certain that Mrs. Satchwell, after she knew her mother had been designated as the payee of the new certificate, accepted the document and kept it until her death without protest, though not without anxiety. The substance of what she said was that she had been greatly worried about whom to make beneficiary.

It is true the by-laws providing for a change of beneficiaries was not literally complied with, as Mrs. Satchwell never signed the request to make her mother beneficiary, nor was a request, in that form, attested by the recorder of the local lodge. As we intend to treat the children of the deceased as the real beneficiaries of the certificate, and Mrs. Philbin as trustee for them, there is no necessity for deciding whether or not the order waived the prescribed formalities for the designation of a new beneficiary by issuing a certificate to Mrs. Philbin. Under our decision, the new beneficiary took no substantial personal interest; and if the circuit court erred in holding she was properly designated, the error will become harmless if she is treated as trustee for the children.

Nevertheless, we are not satisfied with the judg-

ment. This case is of an equitable nature and calls for a decree carrying out the intention of Mrs. Satchwell and doing complete justice to all parties in interest as far as possible. Concerning one fact the witnesses agree; and that is, that Mrs. Satchwell intended this benefit fund should be used to pay her debts to an amount not exceeding $400 and the remainder go to her children. She wished to give no part of it to Mrs. Philbin or Mrs. McCormack absolutely, but only in trust. While we are satisfied with the finding that Mrs. Philbin was intended as the beneficiary and that no fraud was committed in order to have her designated, we are not satisfied with a decree turning the money over to her without providing that she shall hold it in trust for the children. The designation of creditors as beneficiaries is repugnant to the by-laws of the order and must be taken as so far a failure to designate—that is, to the extent of $400. In default of a designated beneficiary the children take in the first place; so they are entitled to the entire fund. Furthermore, the evidence shows that Mrs. Philbin is a very old woman, paralyzed and wholly incompetent to attend to her own affairs. Flannery swore he was looking after her business. She is not a suitable person to entrust with the fund without a bond. We think the judgment ought to be reversed in order that the decree may fix on a proper person to take the fund in trust and dispose of it according to the wish of Mrs. Satchwell. If there was any controversy about the capacity in which it was intended Mrs. Philbin should have it, the propriety of such a decree might be questionable. But everybody who testified about the matter concurred in saying, that Mrs. Satchwell's one thought was for the money to go to her creditors to the amount stated and afterwards to her children. We feel that the paramount duty of a court of equity is to see that this purpose is accomplished (to the extent the by-laws permit) when every interested party is before it and all rights can be protected. The money ought not to be or-

dered into the hands of a helpless trustee, to be turned over to Mrs. McCormack, who is no trustee. It is important that some one shall have it who can take care of it; and especially important that a bond be required. The judgment, therefore, is reversed and the cause remanded with directions to the court below to hear further evidence if it desires, and dispose of the fund so that the children of the deceased will be sure to get the benefit of it. All concur.